# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| PAULA TUMAS,  ) | |
| )  | |
| Plaintiff,  ) | |
| )  | |
| )  | Case No. 06 C 1943 |
| v.  ) | |
| )  | Judge John W. Darrah |
| **BOARD OF EDUCATION OF LYONS**  ) | |
| **TOWNSHIP HIGH SCHOOL DISTRICT**  ) | Magistrate Judge |
| **No. 204, COOK COUNTY ILLINOIS,**  ) |   Martin C. Ashman |
| and **THERESE DECLERK, ATTILA**  ) | |
| **WENINGER, DAVID FRANSON,** and  ) | |
| **DENNIS KELLY,** sued in their official  ) | |
| and individual capacities,  ) | |
| )  | |
| Defendants.  ) | |

## MEMORANDUM OPINION AND ORDER

In this matter, defendants Board of Education of Lyons Township High School District

No. 204 ("Board"), Therese DeClerk, Attila Weninger, David Franson, and Dennis Kelly

(collectively "Defendants") move this Court to enter a protective order pursuant to Federal Rule

of Civil Procedure 26(c) to prevent plaintiff Paula Tumas ("Plaintiff"), from obtaining written or

oral discovery regarding certain closed session meetings of the Board. The matter was referred to

this Court by Judge Darrah in accordance with 28 U.S.C. § 636(b)(1)(A) and Local R. 72.1. For

the reasons that follow, the Court grants the Board's motion.

## I. **Background**

In the underlying suit, Plaintiff is suing Defendants, for and with whom she previously worked, on claims of sex discrimination, age discrimination, deprivation of civil rights, and retaliation for the sex discrimination and age discrimination claims. (Pl.'s Resp. at 1.) The motion presently at issue involves the retaliation claim. Specifically, Plaintiff had made an error on her early retirement form, filed in connection with Article 16 of the Illinois Pension Code. According to Plaintiff, the Board refused to correct this error, which Plaintiff argues is tantamount to retaliation against her for filing sex discrimination and age discrimination claims. (Def.'s Mem. at 1.) Since the claims were filed, the Board has met in closed meetings to discuss its litigation strategy with respect to Plaintiff's claims. (*Id.*) During one of these meetings, the Board specifically discussed the legal implications of Plaintiff's mistake on her retirement form, including discussing whether the Board had the obligation to correct the mistake. (Def.'s Mem. 1-2.)

In seeking to support her retaliation claim, Plaintiff seeks to depose two Board members and requests minutes and transcripts of Board meetings in which Plaintiff or her case were discussed.[1] (Pl.'s Resp. at 2.) According to Plaintiff, this information will establish Defendants' motive or intent, which are elements critical to Plaintiff's retaliation claim. (Pl.'s Resp. at 8.) In response to Plaintiff's discovery requests, Defendants filed this motion on March 21, 2007. (Def.'s Mot. at 2.) Defendants' motion seeks to prevent Plaintiff from discovering any oral or written evidence regarding the Board's litigation strategy. Defendants argue that the information

---

[1] Defendants' Reply states that Defendants have already provided Plaintiff with minutes from the closed meetings that detail the agenda for those meetings. (Def.'s Reply at 2.) Thus, the Court's analysis focuses on the discoverability of the meeting transcripts and the depositions.

discussed at the meetings is protected by the federal common law deliberative process privilege as well as by the Illinois Open Meetings Act and Illinois public policy. (Def.'s Mem. at 2.) The Court agrees that the federal deliberative process privilege prevents Plaintiff from discovering this material, and that Illinois law prevents the discovery as well.

## II. Discussion

### A. Federal Deliberative Process Privilege

Defendants contend that the information discussed at the Board's meetings is protected by the federal deliberative process privilege. (*Id.*) "The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). The policy underlying the privilege recognizes that "frank discussion of legal and policy matters is essential to the decision making process of a governmental agency." *Evans v. City of Chi.*, 231 F.R.D. 302, 316 (N.D. Ill. 2005) (quoting *Becker v. IRS*, 34 F.3d 398, 403 (7th Cir. 1994)). The privilege is not absolute but can be overcome when the person seeking discovery can show a particularized need that outweighs the need for confidentiality. *Farley*, 11 F.3d at 1389. In addition, "the privilege only protects expressions of opinion or recommendations; it does not protect purely factual material." *Bobkoski v. Board of Educ.*, 141 F.R.D. 88, 91 (N.D. Ill. 1992) (citations omitted).

The Court follows two steps in determining whether the deliberative process privilege will protect information from discovery: first, the Court determines whether the party asserting the privilege—Defendants—has shown that the privilege applies; and second, the Court determines whether the party seeking discovery—Plaintiff—has demonstrated a particularized

need for the documents that outweighs Defendants' need for confidentiality. *Ferrell v. United States Dep't of Hous. & Urban Dev.*, 177 F.R.D. 425, 428 (N.D. Ill. 1998). Following this rubric, the Court finds that the Board's discussions are protected by the privilege.

1.      Defendants Must Show that the Privilege Applies.

The Court first addresses whether the deliberative process privilege applies to the information sought. Defendants, as the party asserting the privilege, have the burden to show that the privilege applies. *See K.L. v. Edgar*, 964 F. Supp. 1206, 1209 (N.D. Ill. 1997). The determination involves a substantive element and a procedural element. Substantively, Defendants must show that the discussions were both pre-decisional and deliberative. *Becker*, 34 F.3d at 403. "Pre-decisional" simply means that the privileged information was "generated before the adoption of an agency policy"; "deliberative" refers to "the give and take of the consultative process." *Edgar*, 964 F. Supp. at 1208 (internal quotations omitted) (quoting *Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Indem. Ins. Co. of N. Am.*, No. 87 C 8439, 1989 WL 135203, at *2 (N.D. Ill. Nov. 1, 1989)).

Here, the Board's discussions concerned Plaintiff's legal claims and the Board's litigation strategy regarding those claims, including the possibility of settlement. (*See* Def.'s Mem. at 2; Oral Argument, May 31, 2007.) These discussions are clearly pre-decisional; the case is ongoing, claims have not been resolved, and the parties have not settled. Thus, the discussions occurred before the Board adopted a particular stance toward the claims or the possibility of settlement (or in the midst of the Board's adoption of such a stance). The discussions were also deliberative, because they "centered upon [the Board's] strategic approach to defending Plaintiff's

- 4 -

legal claims." (Def.'s Mem. at 2.) "Indeed, [settlement discussions] and many other types of trial related strategy discussions necessarily involve a governmental entity's deliberative process whereby the entity's members review and select among various options presented." *Bobkoski*, 141 F.R.D. at 93. Defendants have shown that they satisfy the substantive requirements of the privilege.[2]

Defendants also satisfy the procedural steps of asserting the privilege. Procedurally, Defendants must show that they satisfied three steps: (1) someone with control over the matter made a formal claim of privilege after personally considering the matter; (2) the person with control showed "precise and certain reasons" for keeping the documents confidential; and (3) the documents were specifically identified. *Edgar*, 964 F. Supp. at 1209. The purpose of the procedural requirements is to ensure that the party asserting the privilege provides enough information to allow the Court to determine whether or not the documents should be protected. *See id.* at 1210.

The Court addresses the first step and finds that Defendants have asserted a formal claim of privilege. The Court notes that the parties did not specifically address in their briefs whether this step is met. Although the Court concludes from this that Plaintiff does not contest this issue, the Court believes that Defendants have met this step. Notably, Defendants' briefs and exhibits include no mention as to whether someone in control made a formal claim of privilege. On the information before the Court, the only resemblance of a formal assertion of privilege is the

---

[2] The Court notes that many cases give scant analysis as to whether the ostensibly privileged material is pre-decisional and deliberative. *See, e.g.*, *Edgar*, 964 F. Supp. at 1208-10; *Becker*, 34 F.3d at 403. The parties' briefs gave very little argument as to why the document should or should not be considered pre-decisional or deliberative, and the Court need not engage in a lengthy analysis on these issues.

motion for a protective order itself. The Court is unaware of any case addressing whether a protective order is sufficient to constitute a formal claim of privilege, and the parties have cited no case addressing this issue.

The Court therefore turns to two related cases from this district that illuminate this issue. First, *Evans* held that a motion to quash did not satisfy the requirement. 231 F.R.D. at 318 ("Neither the [Prison Review Board's] motion to quash . . . nor its memorandum in support of the motion . . . included any affidavit that sought to establish a *prima facie* case of deliberative process privilege."). On the other side, *Edgar* found the privilege applicable even though the defendants did not formally assert it. 964 F. Supp. at 1210. In *Edgar*, the court indicated that because the defendants had submitted the documents for *in camera* review, "the court was able to determine the nature of the claim of privilege and the reasons for preserving the confidentiality of each document." *Id.*

The Court finds *Edgar* instructive. Neither party disputes that Defendants discussed Plaintiff and her case in closed meetings and that the reason Plaintiff needs the transcripts is to determine the Board's intent. From these facts and the parties' briefs, the Court is able to determine the nature of the information that Defendants claim is privileged. Moreover, Defendants indicate that the reasons they seek to protect this information are to prevent Plaintiff from gaining an unfair advantage by learning Defendants' litigation strategy, as well as to ensure that future Board discussions are not chilled by the prospect of discovery. (Def.'s Mem. at 4.) From this, the Court is able to understand Defendants' reasons for preserving confidentiality. Therefore, like the court in *Edgar*, "defendants have provided sufficient information to enable the court to determine whether or not the documents should be protected by the deliberative process

privilege," 964 F. Supp. at 1210, and the formal assertion of privilege is implicitly met in light of the communications between the parties and with the Court. In short, the Court is confident that Defendants have satisfied the first step.

The Court next addresses the second step and finds that Defendants have provided precise and certain reasons for keeping the discussions confidential. Defendants indicate that allowing Plaintiff to discover the information the Board discussed "will give Plaintiff an unfair advantage and insight into the Board's strategy regarding her lawsuit." (Def.'s Mem. at 4.) If the information is disclosed to Plaintiff, that disclosure would be a serious impediment to the defense of this suit. Defendants further claim that allowing the discussions to be discovered will "undoubtedly inhibit future board members from having frank discussions about other litigation matters." (*Id.*) These reasons provide a basis for understanding why the information should be privileged, and the second step is satisfied.

Finally, the Court addresses the third step first and finds that the protected information is specifically identified. The parties do not dispute what information Defendants seek to protect, and Plaintiff has not indicated that she is unclear as to the identity of the desired discovery items. Although Defendants did not submit a privilege log, the parties and the Court understand that Defendants seek to prevent Plaintiff from deposing two Board members and obtaining transcripts of the meetings in which Plaintiff's case was discussed. (Def.'s Mot. at 1.) The third step is satisfied.

Because Defendants have demonstrated that they meet the substantive and procedural elements of the deliberative process privilege, the Court finds that they have met their burden of showing that the deliberative process privilege applies. Before the Court turns to consider

whether Plaintiff has demonstrated that her need for the documents outweighs Defendants' need for confidentiality, the Court addresses several of Plaintiff's arguments as to whether Defendants have demonstrated that the privilege applies.

Plaintiff contends that the reasons provided by Defendants are "superficial" and "conclusory." (Pl.'s Resp. at 8.) Specifically, Plaintiff cites four factors laid out in *Illinois Educational Labor Relations Board v. Homer Community Consolidated School District No. 208*, 132 Ill. 2d 29, 35, 547 N.E.2d 182, 138 Ill. Dec. 213 (1989), to show that Defendants have not provided enough information to allow them to assert a privilege. The Court initially notes that *Homer* is an Illinois case, and that the privilege that Defendants assert is based on federal law. Thus, in determining whether the privilege applies, the Court is not bound by state cases such as *Homer*.

Nevertheless, even under the rule laid out in *Homer*, Defendants have satisfied their burden. In *Homer*, the court stated that it would recognize a privilege only in cases where four factors were present: (1) the communication originated in a confidence that it would not be disclosed; (2) the element of confidentiality is essential to the maintenance of the relationship between the parties; (3) the relationship is one that the community felt should be "sedulously fostered"; and (4) the injury that would result from disclosure is greater than the benefit gained from the correct disposal of the case. *Id.*

The Court briefly considers these factors in the context of the present case and finds that all four are met. First, the discussions among the Board originated in confidence, with an understanding that they would not be disclosed. This much is clear from the fact that the discussions occurred in the context of closed meetings. (Def.'s Mem. at 1.) Second, the element

- 8 -

of confidentiality is necessary to the maintenance of the relationship between the Plaintiff and Defendants, in light of the fact that Plaintiff and Defendant are opposing parties in litigation; that confidentiality as between parties to a lawsuit is essential for the maintenance of that lawsuit clear beyond the need for citation.[3] Third, the relationship is one that the community would like to sedulously foster. In *Homer*, the court looked at public policy to determine whether the relationship was one that should be sedulously fostered. 132 Ill. 2d at 36-40, 547 N.E.2d 182, 138 Ill. Dec. 213. This Court does the same. Under state law, the Open Meetings Act and Illinois Freedom of Information Act—addressed below—both exempt certain pre-decisional materials from disclosure. 5 Ill. Comp. Stat. 120/2(c)(11); 5 Ill. Comp. Stat. 140/7(1)(f). These Acts demonstrate that Illinois public policy favors a privilege against disclosure of pre-decisional materials. *See People ex rel. Birkett v. City of Chi.*, 184 Ill. 2d 521, 528-29, 705 N.E.2d 48, 235 Ill. Dec. 435 (1998) ("The existence of an FOIA exemption for predecisional materials is evidence of a public policy favoring the confidentiality of such communications.") The Court also considers the practical implications that underlie these statutes. Federal cases recognize the need for boards to be able to discuss matters in confidence, away from public scrutiny. *See, e.g.*, *King v. Internal Revenue Serv.*, 684 F.2d 517, 519 (7th Cir. 1982). In light of the Board's need for frank, confidential discussions, as well as the parties' positions as litigants, the parties' relationship is one that the community believes should be sedulously fostered. Fourth, the injury from the disclosure would be greater than the benefit. Although the information no doubt would

---

[3] As Defendants note, allowing Plaintiff access to the discussions "will give Plaintiff an unfair advantage and insight into the Board's strategy regarding her lawsuit." (Def.'s Mem. at 4.) In order to preserve the balance between the parties as litigants, it is necessary to prevent Plaintiff from discovering Defendants' litigation strategy.

be useful to Plaintiff's case, the Board, by being forced to disclose the discussions surrounding the litigation, would be less likely to speak openly at future meetings for fear of later discovery. This reticence will hurt the Board's deliberations, because "the value of such strategic discussions depends upon the open and frank recommendations and opinions that the deliberative process privilege attempts to foster." *Bobkoski*, 141 F.R.D. at 93 (citing *In re Franklin Nat'l Bank*, 478 F. Supp. 577, 588 (E.D.N.Y. 1979)). This inability to speak frankly and openly about litigation within the context of a closed meeting regarding the cases's strengths, weaknesses, and settlement considerations is particularly weighty, and demonstrates that the potential harm to Defendants is greater than Plaintiff's potential gain. For these reasons, even if *Homer* governed this issue, Defendants have shown that the deliberative process privilege applies.

Plaintiff apparently raises another objection to Defendants' assertion of the deliberative process privilege, saying that the privilege does not apply to state or municipal agencies. (Pl.'s Resp. at 6.) This Court does not agree. Plaintiff argues that *Allen v. Chicago Transit Authority*, 198 F.R.D. 495, 502 (N.D. Ill. 2001), specifically held that the privilege was not available to municipal agencies. (Pl.'s Resp. 6-7.) This Court disagrees with this interpretation of *Allen*. The court in *Allen* did not adopt the holdings in *Bobkoski* and *Moorhead*—federal cases that held that the deliberative process privilege applies to state agencies—because of the Illinois Supreme Court's holding in *Birkett*.[4] *Allen*, 198 F.R.D. at 502 (citing *Birkett*, 184 Ill. 2d at 534, 705

---

[4] Plaintiff also states that "*Birkett* clearly held that there is no deliberative process privilege under state law." (Pl.'s Resp. at 5.) This argument does not persuade the Court that the privilege should not be used here. *Evans*, in addressing this same argument, stated, "the Seventh Circuit has held that federal common law (not state law) governs questions of privilege in a federal question case—even when that federal question case contains supplemental state law claims." *Evans*, 231 F.R.D. at 315 n.5 (citation omitted). The Court does not believe "that the
(continued...)

N.E.2d 48, 235 Ill. Dec. 435). However, contrary to Plaintiff's characterization, *Allen* did not "specifically [hold] that the federal deliberative process privilege was unavailable to municipal agencies." (Pl.'s Resp. at 6.) *Allen* held that because the defendant in that case had not proceeded further than *Bobkoski* and *Moorhead* in its arguments, it had not met its burden of showing that the privilege applied. *Allen*, 198 F.R.D. at 502.

Moreover, several courts have specifically held that the privilege applies to state and municipal agencies. *See, e.g.*, *Bobkoski*, 141 F.R.D. at 92; *Moorhead v. Lane*, 125 F.R.D. 680, 686 (C.D. Ill. 1989). Notably, cases subsequent to *Allen* have likewise applied the privilege to state or municipal agencies. *See, e.g., Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 239 F.R.D. 508, 514-17 (N.D. Ill. 2006) (analyzing the privilege as applied to nine state agencies); *Evans*, 231 F.R.D. at 317-19 (analyzing the privilege with respect to the Illinois Governor's office and the Illinois Prisoner Review Board). The fact that recent cases are willing to apply the privilege to state and municipal agencies reinforces the Court's decision that Defendants are not foreclosed from claiming the privilege by the mere fact that the Board is a municipal agency. Thus, the Court rejects Plaintiff's argument in this regard, and finds that Defendants have met their burden of showing that the privilege applies to the Board's discussions.

---

[4](...continued)
principle [of comity between the state and federal legal systems] permits—much less requires—federal courts to ignore federal common law privileges merely because they have not been recognized in state law." *Id.*

## 2. Plaintiff Must Show Particularized Need.

Because Defendants have demonstrated that the privilege applies to the discovery that Plaintiff seeks, the Court next addresses whether Plaintiff has demonstrated a particularized need for the information that outweighs the need for confidentiality. In balancing the need for disclosure against the need for confidentiality, the Court looks at factors such as

(1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure . . . would hinder frank and independent discussion about governmental policies and decisions.

*Edgar*, 964 F. Supp. at 1209 (citations omitted).

The Court does not believe that the information Plaintiff seeks is as relevant as Plaintiff suggests. During oral argument, Plaintiff's counsel indicated that the Board retaliated by refusing to correct Plaintiff's error on her retirement application. This characterization of the Board's retaliatory behavior is consistent with the parties' briefs. (*See, e.g.*, Def.'s Mem. at 1 ("In her Second Amended Complaint, Plaintiff alleges, among other things, that the District retaliated against her by refusing to correct the errors Plaintiff admittedly made on her application for retirement under Article 16 of the Illinois Pension Code.").) Despite Plaintiff's allegations, Illinois law requires the board of trustees of the Teachers' Retirement System of the State of Illinois to make any corrections, not the defendant Board. *See* 40 Ill. Comp. Stat. 5/16-192; *id.* 5/16-105. With this in mind, apparently the Board does not itself have the power to correct the error in Plaintiff's application. The situation would be different if the Board had the power to correct Plaintiff's mistake; if that were the case, the discussion of the Board would be relevant to Plaintiff's retaliation claim, in that the actions of the Board in refusing to correct the mistake

- 12 -

would be the retaliation that Plaintiff claims. In such a situation, the Board's discussion and decision to refuse to fix the error would be the wrongful activity that forms the basis for Plaintiff's claim, and the relevance of the information—and Plaintiff's need generally—would be significantly greater. Such is not the case because the Board does not have this authority. Insofar as certain Defendants that Plaintiff named might have engaged in retaliatory behavior, the Court can discern little relevance of the discussion of the Board, which apparently had no authority to do what Plaintiff asked of it. This factor weighs heavily toward finding that Plaintiff's need is slight compared to the burden on Defendants.

Plaintiff states that she has little other evidence that she could use to prove her claim. The critical issue for which Plaintiff needs the discovery is the Board's intent or motive. (Pl.'s Resp. at 8.) The Court notes that Defendants state that they have provided Plaintiff with minutes detailing the agenda for the closed meetings. (Def.'s Reply at 2.) Defendants also indicated at oral argument that the Board may have used documents that were not protected to help make the decision; this indicates the possibility of other evidence that could be useful in proving Plaintiff's case. To the extent that the availability of other evidence is a factor, this factor weighs in favor of Defendants.

Although the Court recognizes that Plaintiff's claim is a serious one involving serious civil rights issues, the Court does not find that this factor weighs heavily in Plaintiff's favor. Plaintiff is alleging discrimination and violations of her civil rights. In *Kodish v. Oakbrook Terrace Fire Protection District*, 235 F.R.D. 447, 451-52 (N.D. Ill. 2006), the court refused to apply the deliberative process privilege when the claim at issue was a federal civil rights claim. In balancing the factors, the court indicated that "caution should be especially taken in

recognizing a privilege in a federal civil rights action, where any assertion of privilege must overcome the fundamental importance of a law meant to protect citizens from unconstitutional state action." *Id.* (quoting *Hinsdale v. City of Liberal*, 961 F. Supp 1490, 1495 (D. Kan. 1997)). Further, the defendant in that case provided "no compelling policy interest to justify protecting all communications in the closed session meeting." *Id.* at 452.

Although it deals with civil rights, the instant case is not as clear as *Kodish*. The Board's discussions about Plaintiff's retirement form took place in the context of discussions about settlement strategy. (Def.'s Mem. at 1-2; Oral Argument, May 31, 2007.) In *Bobkoski*, the plaintiff filed an age discrimination claim against the defendant school board. 141 F.R.D. at 89-90. Despite the seriousness of the issue, the court upheld the magistrate judge's ruling that the school board's litigation-related discussions were protected by the deliberative process privilege, holding that "[c]ertainly, discussion of settlement among board members would fall within the deliberative process privilege." *Id.* at 93. Like *Bobkoski*, although Plaintiff's claim involves serious issues, the fact that she alleges discrimination and civil rights violations does not automatically trump the Board's interest in protecting the information. Thus, while this factor is implicated, it only negligibly supports Plaintiff.

The final factor to consider in balancing the need for disclosure against the need for confidentiality is the degree to which disclosure would hinder "frank and independent discussion about governmental policies and decisions." *Edgar*, 964 F. Supp. at 1209 (citation omitted). Allowing Plaintiff to discover the Board's litigation strategy would seriously hinder frank discussion. First, allowing Plaintiff to become privy to Board discussions regarding the strengths and weaknesses of the case, as well as settlement strategies, would handicap Defendants' defense

- 14 -

of this case. This would impact future litigation as well. As Defendants note, "requiring the Board to disclose such communications would temper its ability to handle legal matters, including the present legal matter, as its members will undoubtedly hesitate to openly and candidly discuss such matters in the future." (Def.'s Reply at 4.) Further, allowing this discovery would set a precedent for others similarly situated to seek discovery of the Board's confidential information and allow them "to have full access to closed session discussions as fodder for potential retaliation claims." (Def.'s Reply at 5.) For these reasons, the hindrance of future discussion factor weighs heavily in Defendants' favor.

In balancing all of these factors,[5] when weighing Plaintiff's need for discovery against Defendants' need for protection, Plaintiff has not shown that her need outweighs Defendants'. Therefore, the Court holds that the deliberative process privilege applies to the discovery that Plaintiff seeks that is at issue in this motion.[6]

---

[5] The Court notes that the Board's role as a defendant in this case weighs in Plaintiff's favor. *See Birkett*, 184 Ill. 2d at 530, 705 N.E.2d 48, 235 Ill. Dec. 435 (stating under Illinois law that "where the government is a party to the litigation and, more importantly, has been charged with malfeasance[,] . . . it is unjust to afford the government the benefit of withholding relevant evidence while requiring its opponent to adhere to the established rules of open discovery").

[6] Plaintiff alternatively suggests that if the privilege applies, the Court should determine document by document whether the privilege applies to that particular document. (Pl.'s Resp. at 8.) All of the requested discovery deals with the same Board meeting discussions. Because the nature of the information and reasons for confidentiality remain the same for each piece of discovery, the Court does not believe that listing each deposition and each transcript separately is necessary.

## B.    Open Meetings Act and Illinois Freedom of Information Act

In addition to the federal deliberative process privilege, Defendants also argue that the Court should adopt an Illinois law privilege covering these materials. (Def.'s Mem. at 5-7.) Defendants essentially argue that Board's discussions are protected from disclosure by operation of the Illinois Open Meetings Act ("OMA"), supported by policy underlying the Illinois Freedom of Information Act ("FOIA"). According to *Kodish*, "[i]n determining privilege pursuant to federal common law, the Court must first inquire whether or not there is an existing privilege. If so, that privilege is applied. If not, the Court must then determine whether the federal common law should be expanded to include an asserted state law privilege." 235 F.R.D. at 450-51 (citing *Wilstein v. San Tropai Condo. Ass'n*, 189 F.R.D. 371, 376 (N.D. Ill. 1999)). Although this case arises under federal law, "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Mem'l Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (quoting *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y. 1976)). Further, "where a 'state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule.'" *Id.* (quoting *Lora v. Bd. of Educ.*, 74 F.R.D. 565 (E.D.N.Y. 1977)).

As the Court has discussed above, the federal common law deliberative process privilege applies to the discovery that Plaintiff seeks. Even if the federal common law privilege does not apply, the Court holds that Illinois law provides the basis for a state privilege.

Defendants claim that the Board's discussions fall within exceptions listed in Sections 120/2.06(e) and 120/2(c)(11) of the OMA. (Def.'s Reply at 6-7.) Section 120/2.06(e) of the

OMA provides that "the verbatim record of a meeting closed to the public shall not be open for public inspection or subject to discovery in any administrative or judicial proceeding other than one brought to enforce this Act." 5 Ill. Comp. Stat. 120/2.06(e). Transcripts of the Board's closed meetings are verbatim records of the meetings and fall under this provision. Further, Section 120/2(c)(11) indicates that a public body may hold a closed meeting discussing "[l]itigation, when an action against, affecting or on behalf of the particular public body has been filed and is pending before a court . . . or when . . . an action is probable or imminent, in which case the basis for the finding shall be recorded and entered into the minutes of the closed meeting." 5 Ill. Comp. Stat. 120/2(c)(11). Although it is not clear whether Defendants entered the basis for the litigation into the minutes for the meeting, the settlement discussions and the discussions regarding Plaintiff's claim involve litigation pending before a court, meaning that the discovery Plaintiff seeks falls under both of these exceptions.[7]

The Court believes that the clear language of the Open Meetings Act protects the information Plaintiff seeks from disclosure. Plaintiff's case is not related to the enforcement of the OMA itself, and because the transcripts of the meeting is a verbatim record, it is not discoverable in this case.

---

[7] Plaintiff argues that Defendants did not comply with notice requirements or demonstrate that the Board properly adjourned into closed session based upon one of the exceptions. (Pl.'s Resp. at 4.) The Court refrains from holding that the simple failure to abide by technical protocol necessarily removes the protections accorded by the Acts, particularly in light of the fact that the federal common law deliberative process privilege applies in any event.

Defendants support their argument by pointing to the FOIA. Specifically, Defendants rely on Sections 140/7(1)(f) and 140/7(1)(m) of the FOIA.[8] This reliance is misplaced. The FOIA provides that records of public bodies must be disclosed to the public unless the information falls within a specified exemption. *Birkett*, 184 Ill. 2d at 528, 705 N.E.2d 48, 235 Ill. Dec. 435. The Board's discussions fall within Section 140/7(1)(f), which exempts from inspection "[p]reliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated." 5 Ill. Comp. Stat. 140/7(1)(f).

One Illinois Appellate court has stated that this exemption "is the equivalent of the 'deliberative process' exemption found in . . . the federal Freedom of Information Act, which exempts from disclosure inter- and intra-agency predecisional and deliberative material." *Harwood v. McDonough*, 344 Ill. App. 3d 242, 247, 799 N.E.2d 859, 279 Ill. Dec. 56 (App. Ct. 2003). *Harwood* does not support Defendants' argument to the extent that these words might initially indicate.

In making this statement, *Harwood* cited *Birkett*. *Birkett* held that the FOIA did not "manifest[] the legislature's intent to create a deliberative process privilege applicable to parties in litigation." *Birkett*, 184 Ill. 2d at 528, 705 N.E.2d 48, 235 Ill. Dec. 435. The court recognized that the FOIA's exemption for pre-decisional materials was indicative of a public policy favoring the confidentiality of such materials. *Id.* at 528-29, 705 N.E.2d 48, 235 Ill. Dec. 435. However, *Birkett* noted that this public policy did not necessarily establish that the legislature intended to

---

[8] Although Defendants also raise Section 140/7(1)(m) as an applicable exemption, Section 140/7(1)(m) deals with minutes from closed session meetings. 5 Ill. Comp. Stat. 140/7(1)(m). Defendants indicated that they disclosed the minutes to Plaintiff, the Court need not analyze whether these minutes would have been protected from disclosure. (*See* Def.'s Reply at 7.)

create an evidentiary privilege because "the concerns underlying [the purpose of the FOIA] often differ greatly from those of a party in litigation who needs governmental information in order to establish his case." *Id.* at 529, 705 N.E.2d 48, 235 Ill. Dec. 435. The court held that, in light of the differences between the general public seeking information and litigants seeking discovery, "[w]e do not believe that our General Assembly intended such a result in the creation of FOIA exemption 7(1)(f)." *Id.* at 530, 705 N.E.2d 48, 235 Ill. Dec. 435. The court further held that, in light of the competing policies surrounding the adoption of a deliberative process privilege, the matter was best left to the legislature.[9] *Id.* at 533, 705 N.E.2d 48, 235 Ill. Dec. 435.

Defendants in the instant case argue that the *Birkett* court "recognized the *existence* of the deliberative process privilege, and merely refused to apply the privilege to the facts of the case." (Def.'s Mem. at 3 n.1 (emphasis in original).) The Court disagrees with this interpretation. The *Birkett* court declined to convert the FOIA's exemption against pre-decisional materials into a privilege that could be applied to litigants. *Birkett*, 184 Ill. 2d at 528-29, 705 N.E.2d 48, 235 Ill. Dec. 435. The Court does not believe that *Birkett* allows the Court to make the expansion that it declined to make itself.

Moreover, *Harwood* is consistent with *Birkett*. *Harwood* cited *Birkett* as holding that the FOIA does not create an evidentiary privilege that shields information from discovery; *Harwood* acknowledged that *Birkett* recognized that the FOIA provided an exemption from public

---

[9] The Court notes that court in *Birkett* indicated that it would not recognize the privilege at least partly because the privilege was broadly worded. This leaves open the question of whether Illinois would recognize a narrower version of the privilege. However, subsequent courts have simply read the holding in *Birkett* as refusing to recognize a state deliberative process privilege. *See, e.g., Evans*, 231 F.R.D. at 315 n.5; *Allen*, 198 F.R.D. at 502; *Harwood*, 344 Ill. App. 3d at 247, 799 N.E.2d 859, 279 Ill. Dec. 56. The Court follows these subsequent courts in interpreting *Birkett*.

disclosure of certain documents. In other words, the FOIA—as *Birkett* has held—does not allow a party seeking to prevent material from being discovered to rely on the FOIA as a privilege. Instead, the FOIA generally provides that certain materials must be disclosed to the public, and that when a party seeks public disclosure of these documents, the party desiring to prevent disclosure can rely on FOIA exemptions to prevent disclosure. Illinois courts have approached the issue in exactly this way. *See, e.g.*, *Copley Press, Inc. v. Board of Educ.*, 359 Ill. App. 3d 521, 834 N.E.2d 558 (App. Ct. 2005) (request seeking disclosure of information under the FOIA denied because information fell within FOIA exemption); *Harwood*, 344 Ill. App. 3d 242, 799 N.E.2d 859, 279 Ill. Dec. 56 (same).

Although the FOIA does not support Defendants' argument, the Court believes that the clear words of the OMA provide that Defendants need not disclose the information Plaintiff seeks. Following *Kodish*, the Court finds that this material is protected by Illinois privilege.

### III. Conclusion

For the reasons set forth above, Defendants' motion is granted. Plaintiff is prevented from obtaining written or oral discovery regarding the Board meetings in which Plaintiff or her case were discussed.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
Dated: July 31, 2007.                    United States Magistrate Judge

- 20 -

Copies have been mailed to:

STEVEN E. GLINK, Esq.
Law Office of Steven E. Glink
3338 Commercial Avenue
Northbrook, IL  60062

JOHN A. RELIAS, Esq.
ANNE WILSON LOKKEN, Esq.
KATIE L. BELPEDIO, Esq.
Franczek Sullivan, P.C.
300 South Wacker Drive
Suite 3400
Chicago, IL  60605

Attorney for Plaintiff

Attorneys for Defendants